UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JANE DOE

    Plaintiff,

v.                                                                              Case No. 17-12301

ARSENIY BAKHSEHTSYAN,                               Honorable Victoria A. Roberts

    Defendant.
_____/

**<u>ORDER GRANTING DEFENDANT'S MOTION TO DISMISS [Doc. # 15]</u>**

Jane Doe ("Doe") brings this action under 42 U.S.C. § 1983 against Arseniy Bakhsehtsyan ("Bakhsehtsyan"). Doe alleges that Bakhsehtsyan stalked and threatened her. She reported his behavior to the police and to the University of Michigan ("University"), where they were both students. Bakhsehtsyan faces criminal charges. The University found by a preponderance of the evidence that Bakhsehtsyan stalked Doe. Additionally, Doe obtained a Personal Protective Order ("PPO") against Bakhsehtsyan.

In her complaint ("Complaint") Doe alleges that in retaliation, Bakhsehtsyan: 1) filed a civil suit against her for, *inter alia*, defamation; 2) filed a motion to dissolve the PPO; and 3) sued the University. Doe alleges that by bringing these retaliatory suits, Bakhsehtsyan violated her right to free speech under the First Amendment, and her right to privacy under the Fourteenth Amendment. Specifically, Doe claims that Bakhsehtsyan has "utilized the Michigan courts to act under color of law" in an effort to chill her speech and invade her privacy. [Complaint, Par. 47, 52].

1

Bakhsehtsyan filed a Motion to Dismiss for failure to state a claim upon which relief can be granted. Oral argument was scheduled for and heard on November 17, 2017. Counsel for Bakhsehtsyan failed to appear.

Because Doe fails to establish a factual basis that Bakhsehtsyan was transformed into a state actor and acting under color of law for purposes of 42 U.S.C. § 1983 when he employed his "litigation abuse and strategic lawsuits," Bakhsehtsyan's Motion to Dismiss is **GRANTED**.

## I. BACKGROUND

### A. Past Relationship Between Parties

Doe and Bakhsehtsyan were students at the University's Ross School of Business. The two became romantically involved. Between August 2015 and July 2016, Doe and Bakhsehtsyan traveled together and spent significant time together.

According to Doe, their relationship was "tested" during this period. After taking a trip to Lake Tahoe in July 2016, Doe decided that their relationship could not be reconciled, partially because Bakhsehtsyan threatened that he would end her career and ruin her reputation if she broke up with him. In mid-July 2016, Doe tried to end the relationship, sending Bakhsehtsyan over a dozen messages asking him not to contact her again. Doe then blocked Bakhsehtsyan from her phone. [Complaint, Par. 8-11].

Doe alleges that her requests did not deter Bakhsehtsyan. He flew to Portland and showed up unannounced at her apartment, although she had asked him not to. Over the next month, Bakhsehtsyan sent messages over various internet applications, demanding to see Doe. Bakhsehtsyan did this even though Doe had blocked his calls;

and she tried to block the various assumed names he used in attempts to contact her. Doe sent Bakhsehtsyan a final email saying if he did not stop messaging her, she would seek legal action against him. Bakhsehtsyan still sent emails to Doe threatening to end her career if she did not talk to him. [Complaint, Par. 11-13].

Doe allegedly began receiving sexually vulgar and threatening text messages from unknown numbers. The texts indicated that the sender knew where Doe was. The sender also mentioned Doe's sexual behavior, called her degrading names, and threatened to "kick her ass" or "break her fingers one by one." Doe received these messages for months. She could not be sure they came from Bakhsehtsyan, but given the timing, Doe suspected that he might be involved. She discussed the matter with friends and relatives, who believed Bakhsehtsyan was the source of the messages, and advised her to do what she needed to do to stay safe. Doe also says that over several months, she received a constant barrage of calls from unknown numbers, sometimes coming in batches of 100 per hour. [Complaint, Par. 14-16].

Finally, when Doe returned to campus in Fall 2016 to start her second year, Bakhsehtsyan repeatedly arrived at the inside door of the apartment where Doe lived alone. To get to the inside door, Bakhsehtsyan waited by the locked outside doors for someone to enter or exit. Doe did not answer her door when Bakhsehtsyan arrived in this fashion. [Complaint, Par. 17].

### B. History Of Doe's Legal Action Against Bakhsehtsyan

On September 1, 2016, Doe reported Bakhsehtsyan's behavior to the University. After receiving witness accounts, and reviewing texts messages between the parties,

3

the University's Office of Institutional Equity issued a report. This report said Doe alleged that between May and September 2016, Bakhsehtsyan engaged in harassing and unwanted contact constituting stalking behavior, including texts, emails, phone calls, social media messages, and in person contact. The report concluded by a preponderance of the evidence, that Bakhsehtsyan had stalked Doe. Bakhsehtsyan appealed the decision. Judge Barbara S. Jones, United States District Judge for the Southern District of New York, reviewed and returned the report with no changes.

Doe also filed a police report regarding Bakhsehtsyan's stalking behavior. This sparked a criminal investigation. Doe shared the text messages she received with detectives at the Ann Arbor Police Department. The investigation led a detective to file a criminal complaint against Bakhsehtsyan . He was arraigned on March 9, 2017 on several counts, including Aggravated Stalking, and Malicious Use of Telecommunications Services. Doe testified during Bakhsehtsyan's preliminary hearing. Bakhsehtsyan was bound over to face felony charges in the Washtenaw County Circuit Court. Trial is scheduled to begin December 11, 2017.

Doe also obtained an *ex parte* PPO against Bakhsehtsyan on April 21, 2017.

### C. History Of Bakhsehtsyan's Legal Action Against Doe

On March 7, 2017, Bakhsehtsyan filed a case against Doe for Defamation, False Light, Intentional Infliction of Emotional Distress, and Intentional Interference with Business Relations, in Washtenaw County Circuit Court. According to Doe, Bakhsehtsyan filed this suit because of her allegations against him. Doe alleges that after Bakhsehtsyan filed suit, he immediately sought private information about Doe

using the state court discovery process. Specifically, Bakhsehtsyan subpoenaed the University for Doe's grades. Doe filed a protective order in an attempt to quash the subpoena. The court denied it and ordered the University to comply with Bakhsehtsyan's request. Doe alleges that Bakhsehtsyan seeks to depose her, and declined to handle discovery through written interrogatories.

Bakhsehtsyan also sued the University on May 16, 2017 in the Michigan Court of Claims. His claims against the University rise out of its findings that Bakhsehtsyan stalked Doe. Bakhsehtsyan alleges the University violated Title IX of the Education Amendments Act and his due process rights. Doe alleges that this suit is a continuation of Bakhsehtsyan's multi-pronged strategy to retaliate against her for seeking help.

Finally, Bakhsehtsyan filed a motion to dissolve Doe's PPO on June 7, 2017. The PPO rules afforded Bakhsehtsyan a hearing, and Doe traveled across the country to be questioned by Bakhsehtsyan's attorney. Bakhsehtsyan watched.

### D. This Lawsuit

Doe filed her two-count Complaint on July 7, 2017, claiming a violation of her First Amendment rights, and a violation of her Fourteenth Amendment Rights, both pursuant to 42 U.S.C. § 1983.

In broad strokes, Doe describes how litigation abuses and strategic lawsuits allow others to use the courts to chill free speech and invade privacy. According to Doe, when victims obtain PPOs, stalkers resort to lawsuits to continue harassing and abusing their victims. Specifically, Doe alleges that if Bakhsehtsyan is allowed to continue his litigation "war" against her, future stalking victims would be deterred from reporting

stalking, an already underreported crime. She claims that her case is one of an increasing number of strategic lawsuits which seek to target victims who report stalking and domestic violence crimes. [Complaint, Par. 32-41]. Multiple organizations against domestic violence jointly filed an *amici curiae* brief that further detailed litigation abuses.

While the Court acknowledges the real threats that stalkers and domestic abusers present to their victims, and that some stalkers may use courts to further victimize, it is not convinced that Doe has standing to assert the rights of others who may have been victims of litigation abuse; she does not file this as a class action suit.

Doe alleges that Bakhsehtsyan's lawsuits and discovery requests are an attempt to gain access to her. Because of Bakhsehtsyan's actions, Doe says she has continuously felt under attack and has suffered emotional angst. According to Doe, her conversations with friends, family, the police, and University representatives are speech protected by the First Amendment. She had such conversations in an effort to gain redress from the government and the University. She says Bakhsehtsyan's aggressive, litigious actions against her are strategically calculated to chill her ability to seek this redress. Doe also claims that Bakhsehtsyan's suit against the University threatens to cut her off from appropriate support from the University.

Doe alleges that Bakhsehtsyan utilized the Michigan courts to act under color of law and continue to contact her in an effort to chill her speech. Bakhsehtsyan's intentional actions, according to Doe, violated her First Amendment Rights pursuant to § 1983. [Complaint, Par. 31, 45-48].

6

Finally, Doe claims that she has a privacy interest in keeping her intimate behavior private. By asking for help, Doe alleges that she did not seek to render public any of the vulgar and lewd text messages she received. Doe alleges that Bakhsehtsyan acted under color of law by using the Michigan courts to invade her privacy by bringing to light intimate details of her life, in an effort to chill her participation in investigations against him. Bakhsehtsyan's intentional actions, according to Doe, violated her Fourteenth Amendment Rights pursuant to § 1983. [Complaint, Par. 51-52, 54].

In his Motion to Dismiss, Bakhsehtsyan argues that he is simply a state court litigant – and not a state actor – and did not act under color of state law. For this reason, Bakhsehtsyan argues that Doe's § 1983 complaint should be dismissed for failure to state a claim.

### E.  Effect Of Other Litigation On This Case

Doe lists several prayers for relief in her Complaint. However, due to recent developments in the Michigan state court cases, Doe's requests for injunctive relief are moot.

First, Doe asks the Court to enjoin the Washtenaw County Circuit Court from allowing discovery in Bakhsehtsyan's defamation action against her, until the conclusion of Bakhsehtsyan's criminal trial. However, on July 27, 2017, the Washtenaw County Circuit Court stayed the defamation action pending conclusion of Bakhsehtsyan's criminal case. This request is moot.

Second, Doe asks the Court to enjoin the Washtenaw County Circuit Court from allowing an evidentiary hearing on Bakhsehtsyan's motion to dissolve her PPO, until the

conclusion of Bakhsehtsyan's criminal trial. This request is moot as well; the state court denied Bakhsehtsyan's motion, and issued a modified PPO on August 31, 2017 that is effective until April 21, 2022.

Finally, Doe asks the Court to enjoin the Michigan Court of Claims from allowing Bakhsehtsyan to depose her in his case against the University, until the conclusion of Bakhsehtsyan's criminal trial. However, the state court granted the University's motion to dismiss. Bakhsehtsyan filed a motion for reconsideration, but the state court denied it. The case was closed on October 9, 2017. Accordingly, no discovery can occur in this closed case. This request is moot as well.

Doe's remaining requests are that the Court: 1) declare Bakhsehtsyan's conduct unlawful and unconstitutional; 2) take pendent jurisdiction over Bakhsehtsyan's state court civil action; and 3) award monetary damages.

## II.  ANALYSIS

### A.  Standard Of Review

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) tests the legal sufficiency of the complaint. *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996).  A court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *DirecTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007).  Dismissal is proper only if it appears beyond doubt that the plaintiff can prove no set of facts in support of the claims that would entitle him or her to relief." *Zaluski v. United Am. Healthcare Corp.*, 527 F.3d 564, 570 (6th Cir. 2008).  A complaint must contain sufficient factual

matter to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

### B. Bakhsehtsyan Is Not A State Actor

Doe argues that Bakhsehtsyan is a state actor and subject to liability under the First and Fourteenth Amendments, pursuant to § 1983. The Court disagrees.

"Normally, the activities of a private entity … in litigating … a civil dispute, are not conduct under color of state law, an essential ingredient of an action under § 1983." *Dempsey v. Sears Roebuck & Co.*, 1992 U.S. App. LEXIS 20672, *2 (1st Cir., Jun. 5, 1992). However, the Supreme Court has found that private litigants may act under color of law when they "make extensive use of state procedures with the overt, significant assistance of state officials." *Edmonson v. Leesville Concrete Co.*, 500 U.S. 614, 622 (1991).

"In order to prevail on a claim brought under 42 U.S.C. § 1983, a plaintiff must show that a person acting under color of state law deprived him of a right secured by the U.S. Constitution or a federal law. A state actor's violation of an individual's substantive due process right to privacy may give rise to a cognizable § 1983 claim." *Moore v. WesBanco Bank, Inc.*, 612 Fed. Appx. 816, 821 (6th Cir. 2015).

9

Doe relies primarily on two cases to support her state actor argument: *Lugar v. Edmondson Oil Co.*, 457 U.S. 922 (1982), and *Edmonson v. Leesville Concrete Co.*, 500 U.S. 614 (1991).

In *Lugar*, the plaintiff, a lessee-operator of a truck stop, was indebted to his supplier, the defendant. *Lugar*, 457 U.S. at 924. The defendant sued plaintiff to recover the debt in Virginia state court, and pursuant to state law, sought prejudgment attachment of plaintiff's property. *Id.* A state court clerk issued a writ of attachment; the County Sherriff executed it. *Id.* The plaintiff filed suit in federal court under § 1983, arguing that in attaching his property, the defendant acted jointly with the state to deprive him of his property without due process of law. *Id.* at 925. The Court ultimately held that "a private party's joint participation with state officials in the seizure of disputed property is sufficient to characterize that party as a state actor … ." *Id.* at 941 (internal quotations omitted).

*Lugar* involved an *ex parte* application by one party in a private dispute. Importantly, the Court clarified that its holding "is limited to the particular context of prejudgment attachment." *Id.* at 939 n. 21.

In *Edmonson*, the plaintiff, a black man, sued the defendant, his employer, in federal court for negligence after he was injured on a jobsite in Fort Polk, Louisiana. *Edmonson*, 500 U.S. at 616. During *voir dire*, the defendant used two of its three peremptory strikes to remove black persons from the prospective jury. *Id.* Citing *Batson v. Kentucky*, 476 U.S. 79 (1986), the plaintiff requested that the district court require the defendant to articulate a race-neutral reason for striking the two blacks. *Id.* at 616-17. The district court held that *Batson* did not apply to civil cases. *Id.* at 617. The Court of

10

Appeals affirmed, holding that "the use of peremptories by private litigants does not constitute state action and, as a result, does not implicate constitutional guarantees." *Id.*

The Supreme Court reversed. It cited *Lugar*, recognizing that "without the overt, significant participation of the government, the peremptory challenge system, as well as the jury trial system of which it is a part, simply could not exist." *Id.* at 622. Further, the Supreme Court concluded that the selection of jurors is a traditional government function, and held that "a private entity becomes a government actor for the limited purpose of using peremptories during jury selection." *Id.* at 627.

*Lugar* and *Edmonson* are distinguishable. The state of Michigan had no involvement in Bakhsehtsyan's litigation other than to promulgate rules of procedure for court proceedings. This is a passive role, and the state did not encourage or render assistance in the litigation to Bakhsehtsyan. *Parker v. Byrd & Wiser*, 947 F. Supp. 245, 250 (S.D. Miss. 1996). Such a situation is hardly equivalent to that of *Edmonson*, where the court was heavily involved in empaneling the jury, and the Supreme Court has described that role as a traditional government function. *Id.*

*Lugar* announced a two-part test for determining state action. The Supreme Court explained that a private party can be considered a state actor when: 1) the deprivation was caused by the exercise of some right or privilege created by the state; and 2) the party charged with the deprivation is a state actor, which may be because he is a state official, acted together with or obtained significant aide from state officials, or because his conduct is otherwise chargeable to the state. *Lugar*, 457 U.S. at 937.

11

The first prong is met here: Doe alleges that Bakhsehtsyan's utilization of state court civil procedures, a privilege created by Michigan, deprived her of her constitutional rights. However, the inquiry does not end there, and the Court must carefully examine whether the state action requirement is met as well. *Id.* at 936.

To satisfy the second *Lugar* prong, Doe argued at the hearing that Bakhsehtsyan relied on courts to contact her, via a court summons containing the imprimatur of the court, and this represented significant aide to Bakhsehtsyan from state officials. Because there was a PPO in place prohibiting Bakhsehtsyan from otherwise contacting Doe, the courts, she argued, are the "but for" cause of his continued harassment. Doe further argued that Bakhsehtsyan utilized a state process that fails to protect the constitutional rights of crime victims, and Bakhsehtsyan's conduct becomes otherwise chargeable to the state.

Although related, these two prongs are distinct. *Id.* at 937. Doe conflates them by arguing that Bakhsehtsyan's use of state court process converts his conduct into state action. However, as the Supreme Court recognized, "[a]ction by a private party pursuant to [state procedure], without something more, [is] not sufficient to justify a characterization of that party as a state actor." *Id.* at 938 (internal quotations omitted).

Further, Doe does not allege that state court officials did anything active as the state officials did in *Lugar*, such that Bakhsehtsyan could be considered a joint participant with state officials. While the Michigan Court of Claims ordered the University to comply with Bakhsehtsyan's subpoena for Doe's grades, there is an important distinction between using state court litigation procedures available to all, and actually using state officials to carry out those procedures. *Smith v. Hilltop Basic Res., Inc.*, 99

12

Fed. Appx. 644, 648 (6th Cir. 2004). "Contrary to [Doe's] assertions, the rationale of *Lugar* and *Edmonson* cannot be expanded to cover a private [litigant] who does nothing more than issue a subpoena and oppose a motion to quash brought by the subpoenaed party." *Id.* Bakhsehtsyan's actions "are more akin to tactical litigation practices than traditional governmental functions like the exercise of peremptory challenges" in *Edmonson. Id. See also Bochetto v. Labrum & Doak, L.L.P.*, 1997 U.S. Dist. LEXIS 13326, *16 (E.D. Penn., Aug. 27, 1997) ("The mere issuance of a subpoena does not rise to the level of a significant contribution of the state. It is one step removed. It is not the direct and immediate seizure of the requested information").

Doe only alleges that Bakhsehtsyan's reliance on the courts – and availing himself of its process including discovery – constitutes state action. However, litigation choices made by a private litigant in a civil case cannot be fairly attributable to the state. *Dempsey*, 1992 U.S. App. LEXIS 20672 at *2. It is well settled that a private litigant does not act under color of state law merely by bringing or defending a matter before a state court. *Robinson v. Michigan*, 2009 U.S. Dist. LEXIS 84814, *26 (W.D. Mich., Aug. 4, 2009). *See also Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 54 (1999) ("While the decision of a [utilization review organization], like that of any judicial official, may properly be considered state action, a private party's mere use of the State's dispute resolution machinery, without the overt, significant assistance of state officials, cannot").

Bakhsehtsyan's initiation of civil suits and utilization of state court procedures do not transform him into a state actor for purposes of § 1983 liability. *Edmonson*, 500 U.S. at 622. His actions lack the "something more" which *Lugar* held was an essential

13

ingredient to justify the characterization of a private citizen as a state actor. *Lugar,* 456 U.S. at 938.

### C. Doe's Allegations Of Bad Faith Do Not State A Claim For Relief

Doe alleges that Bakhsehtsyan utilized state court procedures in bad faith, which should support a finding that he acted under color of state law. In his reply brief, Bakhsehtsyan only addresses this argument in passing, saying it is nothing other than an attempt to get the Court to ignore clearly established law.

Courts have dismissed plaintiffs' § 1983 claims when they did not allege that the defendant acted in bad faith in initiating state court proceedings. *See Louisville Area Inter-Faith Committee for United Farm Workers v. Nottingham Liquors, Ltd.*, 542 F.2d 652, 655 (6th Cir. 1976) ("[T]he federal complaint does not allege that [the defendant] moved for the state court restraining order in bad faith … "); *Gottfried v. Medical Planning Servs.*, 280 F.3d 684, 692 (6th Cir. 2002) ("Nor has [the plaintiff] alleged that the … defendants petitioned the state courts in bad faith …).

However, before addressing whether plaintiffs properly pleaded that defendants acted in bad faith, these courts preliminarily addressed whether defendants acted under color of law. *See Nottingham Liquors*, 542 F.2d at 655 ("We do not view [the defendant's] initiation of the state proceedings to be state action"); *Gottfried*, 280 F.3d at 692 ("[W]e do not find the fact that the … defendants initiated state court proceedings to obtain an injunction to be state action").

Doe's allegations of Bakhsehtsyan's bad faith mean nothing unless she factually supports first – that he is a state actor. She does not. Thus, although Doe may have

alleged that Bakhsehtsyan utilized the state courts in bad faith, because she fails to state a claim that Bakhsehtsyan acted under color of law, Doe's allegations of bad faith are meaningless.

### D. Michigan Procedures Have Not Been Declared Constitutionally Inadequate

Doe argues that Bakhsehtsyan's actions were only possible because Michigan's court rules and procedures are not designed to protect crime victims. According to Doe, Michigan's procedures are constitutionality inadequate because 1) civil discovery procedures lack protection for crime victims who are sued; 2) the witness intimidation statute fails to protect crime victims who are sued; and 3) the state lacks protections, which other states have adopted, for crime victims who are sued in retaliation for reporting crimes. Doe argues because the *Lugar* and *Edmonson* courts found state action where there were inadequate safeguards, this Court should similarly find that Bakhsehtsyan acted under color of state laws which insufficiently protected crime victims.

Doe would have the Court rule in this narrow circumstance, that when a criminal defendant sues his accuser while criminal charges are pending, Michigan court procedures are inadequate to protect crime victims' constitutional rights. However, Doe does not bring a constitutional challenge to any procedures, or cite to specific statutes for the court to consider. The Court declines Doe's request.

Furthermore, Doe cites to no cases in which a court found that Michigan's procedures were unconstitutional. The Court is not required to accept Doe's legal

15

conclusion couched as a factual allegation. *Iqbal*, 556 U.S. at 678. She cannot prove that Bakhsehtsyan utilized these procedures knowing they were unconstitutional; they have not been declared as such.

Thus, Doe cannot state a claim for relief. *See Grossman v. DTE Energy Co.*, 2010 U.S. Dist. LEXIS 133572, *7-8 (E.D. Mich., Dec. 17, 2010) ("In those cases when a litigant's joint efforts with the state *were* deemed sufficient to trigger state action, the plaintiff alleged … deliberate bad faith on the part of the litigant in seeking court action that is unconstitutional") (emphasis in original). *See also Gottfried*, 280 F.3d at 692 ("Nor has [the plaintiff] alleged that the … defendants petitioned the state courts in bad faith *or with knowledge that obtaining an injunction would be unconstitutional*") (emphasis added).

### E. The Court Declines Supplemental Jurisdiction

Does asks the Court to take pendent jurisdiction over the claims and counterclaims raised in Bakhsehtsyan's state court action against her, and to dismiss Bakhsehtsyan's claims and issue appropriate sanctions.

Bakhsehtsyan's state action includes claims for defamation, false light, intentional infliction of emotional distress and intentional interference with business relations. These allegations cover a host of issues between Doe and Bakhsehtsyan.

The law only allows the Court to exercise jurisdiction over other claims that are "so related" to the claim over which the Court has original jurisdiction that they form part of the same case or controversy. 28 U.S.C. § 1367(a).

More importantly, Doe has a jurisdictionally insufficient federal claim which the Court is dismissing. Accordingly, the Court exercises its discretion to decline supplemental jurisdiction over any state court claims that may be related to this dismissed claim. 28 U.S.C. § 1367(c).

### III.    CONCLUSION

It has been difficult to isolate the particular constitutional infringement that Doe complains of. Doe says litigation abuse and Bakhsehtsyan's strategic lawsuits against her public participation have transformed the state courts into Bakhsehtsyan's vehicle to chill her free speech and invade her privacy.

The Court accepts as true Doe's allegations that she feels constantly threatened and anxious because of Bakhsehtsyan's use of state court civil discovery procedures. Construing the allegations of the complaint in her favor, Bakhsehtsyan's actions towards Doe justify her sense of danger, and may even have the effect of depriving her of her privacy and free speech.

However, because Doe fails to allege facts that support a finding that Bakhsehtsyan is a state actor, she cannot get redress for Bakhsehtsyan's actions using § 1983 as a vehicle. The factual basis to support that Bakhsehtsyan acted under color of state law is clearly missing. *Hilltop*, 99 Fed. Appx. at 646. And, interpreting § 1983 in a way that reaches this type of private conduct would give courts the authority to "amplify prohibitions of the Constitution," an authority that the courts do not possess. Lisa E. Heinzerling, Actionable Inaction: Section 1983 Liability for Failure to Act, 53. U. Chi. L. Rev. 1048, 1060 nt. 71 (internal citations omitted).

Doe argued at the hearing that Michigan's failure to protect crime victims in the civil discovery process supports a finding of state action. However, courts have required that a special duty exist between states and private citizens before the state can be held liable for a failure to act. *Id.* at 1051. But a state's decision to provide basic protections to the general public does not obligate it to render assistance in a specific situation. *Id.* at 1056. Accordingly, Michigan's alleged failure to act is not actionable under § 1983.

Alleging facts that would hold a state liable under § 1983 for its inaction is tough enough. And Doe does not even seek relief against the state. The missing piece of the puzzle is that Doe fails to establish the state had any duty to act in the first place to protect her from Bakhsehtsyan's litigation strategies. She also fails to establish that Bakhsehtsyan's choice of lawful strategies – without any overt, significant assistance of state officials – somehow created a close enough nexus between Bakhsehtsyan and the state such that any injuries suffered by Doe and caused by Bakhsehtsyan, can be described as state action for purposes of §1983 liability. This is simply not the law.

Because Doe fails to allege facts that would allow the Court to draw the reasonable inference that Bakhsehtsyan is an instrument of the state, Doe's § 1983 claim fails.

Bakhsehtsyan's Motion to Dismiss is **GRANTED**.

**IT IS ORDERED**.

                                                  S/Victoria A. Roberts
                                                  Victoria A. Roberts
                                                  United States District Judge

Dated: November 21, 2017